IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

STEPHANIE W.,[1]

        Plaintiff,

v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

No. 6:22-cv-1433-HZ

OPINION & ORDER

HERNÁNDEZ, District Judge:

    Plaintiff Stephanie W. brings this action seeking judicial review of the Commissioner's final decision to deny her application for disability insurance benefits ("DIB") and supplemental security income ("SSI"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). The Court reverses and remands the Commissioner's decision for further proceedings.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the nongovernmental party in this case.

1 – OPINION & ORDER

**PROCEDURAL BACKGROUND**

Plaintiff applied for DIB and SSI on November 1, 2018, alleging an onset date of March 31, 2017. Tr. 222-36.[2]. Her date last insured is September 30, 2017. Tr 15. Her application was denied initially and on reconsideration. Tr. 125-33, 138-44.

**FACTUAL BACKGROUND**

Plaintiff alleges disability based on mental health issues: OCPD, anxiety, PTSD, ADHD, and learning disabilities. Tr. 261. At the time of her alleged onset date she was 25 years old. Tr. 268. Plaintiff has limited education--the highest grade she completed in school was 8th--and past relevant work experience as a nurse assistant. Tr. 25, 262.

**SEQUENTIAL DISABILITY EVALUATION**

A claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(b). In step two, the Commissioner determines whether the

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 8.

claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. § 404.1520(c). If not, the claimant is not disabled. *Id.*

In step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. § 404.1520(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform their "past relevant work." 20 C.F.R. § 404.1520(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. § 404.1520(e)–(f). If the Commissioner meets their burden and proves that the claimant can perform other work that exists in the national economy, then the claimant is not disabled. 20 C.F.R. § 404.1566.

## THE ALJ's DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since March 31, 2017, the alleged onset date. Tr. 16. Next, at steps two and three, the ALJ determined that Plaintiff has the following severe impairments: "major depressive disorder (MDD) vs. dysthymia; generalized anxiety disorder (GAD) with panic disorder and social phobia; mixed personality disorder with avoidant and self-defeating features; mixed attention deficit-hyperactive disorder (ADHD); specific learning disorder of mathematics; posttraumatic stress disorder (PTSD) with reported dissociative features; history of methamphetamine and

heroin dependence/abuse disorders (in remission since 2016); and obesity." Tr. 16. However, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 16. At step four, the ALJ concluded that Plaintiff has the residual functional capacity to perform medium work as defined in 20 C.F.R. § 404.1567(c) with the following limitations:

> maximally, the claimant can perform work activity not requiring understanding, learning, or carrying out of more than simple, routine tasks; and not requiring adaptation to unforeseen changes in work duties or work setting, on more than a minimal basis. Additionally, the claimant cannot perform tasks involving more than superficial interaction with the general public or coworkers; nor can she perform fast, production-paced tasks involving designated quotas, such as work done on a conveyor belt.

Tr. 19. Because of these limitations, the ALJ concluded that Plaintiff could not perform her past relevant work. Tr. 25. At step five, the ALJ found that Plaintiff retained the capacity to perform other jobs in the national economy. Tr. 25-26. Thus, the ALJ concluded that Plaintiff is not disabled. Tr. 27.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings "are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted). Substantial evidence is "more than a mere scintilla," and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1150 (2019) (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision

must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's.") (internal quotation marks omitted).

## DISCUSSION

### I. Symptom Testimony

Plaintiff argues that the ALJ erred in rejecting her symptom testimony. Pl. Br., ECF No. 11 at 5. The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). The ALJ engages in a two-step analysis for subjective symptom evaluation. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (superseded on other grounds). First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal quotations omitted). Second, "if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms." *Id.* (internal quotations omitted).

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). "An ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195

(9th Cir. 2001); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony.").

At the hearing, Plaintiff shared that she stopped working because her anxiety became too much. Tr. 46, 49. She struggled to remember whether she had actually completed work tasks. Tr. 46-47. She would dissociate when she felt like she did not have enough time in the day to complete her tasks. Tr. 50. Her dissociations were triggered by everyday things, such as social interactions and remembering to attend appointments. Tr. 51. She also experienced panic attacks, which were triggered by talking to people, going out in public, thinking about appointments, or thinking about things she needed to get done. Tr. 52-53. Her current medications had "worked more than any other medication" but still were "not really" helpful. Tr. 53. She lived with her children, ages ten and eight, who helped keep her grounded. Tr. 54-55, 58. She did not drive because she was afraid of crashing; she traveled by bicycle. Tr. 55. Besides grocery shopping, she left her house only to attend appointments and to take her children to school. Tr. 56. Since leaving her job she has done unpaid babysitting for friends. Tr. 47, 58. Plaintiff dropped out of school in the eighth grade and was unable to earn a GED. Tr. 48. She had an IEP and struggled in all subject areas. Tr. 48-49.

In a written function report, Plaintiff reported that she had memory problems, panic/anxiety attacks, and dissociative episodes. Tr. 292. She struggled to learn new things. Tr. 292. In a typical day, she helped her children go to school, then she went back to sleep, picked her kids up, made them snacks, lay down, "cuddle[d] them," made dinner, bathed her children, and went to bed. Tr. 292. She did not handle stress or changes in routine well. Tr. 293. Her PTSD had gotten worse; she "fe[lt] like people [were] gonna break in [and] kill [her]. Anxiety

attack at least 6 tim[e]s a day [and] dissacosiate [*sic*]." Tr. 293. The only place she went on a regular basis was to take her kids to and from school. Tr. 294. She needed someone to accompany her. Tr. 294.

The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms and did not identify evidence of malingering. Tr. 20. However, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 20. Specifically, the ALJ found Plaintiff's symptom allegations were inconsistent with objective medical evidence and her improvement with treatment, and that Plaintiff's daily activities conflicted with her symptom allegations. Tr. 20-25.

*A. Objective Medical Evidence*

The ALJ is instructed to evaluate objective evidence in considering a claimant's symptom allegations. 20 C.F.R. § 416.929(c)(2) ("Objective medical evidence ... is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms[.]"). Indeed, "[w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (emphasis in original); s*ee also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (affirming the ALJ's credibility finding when the plaintiff's testimony of weight fluctuation was inconsistent with the medical record). A claimant's failure to report symptoms to providers is another valid basis to find a claimant's symptom allegations unreliable. *Greger v. Barnhart*, 464 F.3d 968, 972-73 (9th Cir. 2006).

The ALJ reasonably discounted Plaintiff's allegations about the severity of her mental health symptoms as inconsistent with the record. Conflict with objective medical evidence is a

sufficient basis for discounting a claimant's testimony. *Smartt*, 53 F.4th at 498; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). At the hearing, Plaintiff testified that her anxiety was the root of her decision to stop working. Tr. 48-50. She described how her anxiety caused her to "dissociate," and that she would have panic attacks "at least 6 time[s] a day." Tr. 50-53, 293. Plaintiff further shared how these mental health symptoms made it difficult for her to focus, remember things at work, and socialize outside the home. Tr. 48-51, 56. The ALJ discounted several aspects of this testimony based on its inconsistency with the record. For example, the ALJ noted that Plaintiff reported far fewer than six panic attacks a day at medical appointments in June and October, 2019. Tr. 23 (citing Tr. 342, 921). By January 2021, the ALJ noted that Plaintiff reported experiencing no panic attacks at all. Tr. 21 (citing Tr. 921). In terms of Plaintiff's anxiety symptoms, the ALJ also reasonably discounted this testimony as compared with multiple positive mental status examinations between June, 2019 and January, 2021. Tr. 21 (citing Tr. 530-44, 695, 705, 734, 921). These tests showed Plaintiff experienced only mild anxiety symptoms, which the ALJ incorporated into the RFC. Tr. 22-23 (acknowledging Plaintiff's "mildly anxious affect/mood" when formulating workplace limitations in the RFC). Ultimately, the ALJ supported the decision to discount Plaintiff's testimony about the extent of her anxiety and panic attacks with substantial objective medical evidence tending to show her symptoms were not as severe as alleged.

  *B. Improvement with Treatment*

  An ALJ may reject a claimant's symptom testimony if that testimony is contradicted by evidence in the medical record. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). If the record shows a claimant's symptoms have improved with treatment, that improvement is "an important indicator of the intensity and persistence of ... symptoms." 20

C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). The Ninth Circuit has held that "evidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017). Additionally, an ALJ may consider a claimant's unexplained or inadequately explained failure to follow a prescribed course of treatment. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

The ALJ also reasonably concluded that Plaintiff's mental health symptoms improved with treatment, which undermined her hearing testimony. Although Plaintiff complained that symptoms associated with her anxiety and depression impacted her ability to work, Tr. 65-66, the ALJ noted that Plaintiff addressed these symptoms effectively with a conservative course of medications and counseling. Tr. 21. Specifically, Plaintiff reported that by January 2021 she had no manic symptoms, reduced PTSD trauma memories, and had experienced no panic attacks, of late. Tr. 921. Her psychotherapy notes likewise indicated that her focus is better with medication, and memory had improved over time with treatment. *See, e.g.,* Tr. 915. This is another clear and convincing reason, supported by substantial evidence to discount Plaintiff's symptom testimony about the extent to which her anxiety and memory-related-symptoms continue to render her unable to work.

### C. Daily Activities

The ALJ also discounted Plaintiff's subjective symptom testimony because it was inconsistent with her daily activities. Tr. 23. Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills," or (2) where the activities "contradict [a claimant's] testimony." *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007). The relevant regulations require an ALJ to consider a claimant's daily activities when evaluating subjective

9 – OPINION & ORDER

symptom statements. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). The Ninth Circuit has even found such routine activities as playing video games, using public transportation, and preparing meals to undercut a claimant's testimony of disabling limitations. *Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021).

The ALJ reasonably concluded that Plaintiff's ability to care for her children, socialize, and babysit others' children conflicted with her testimony about the severity of her anxiety and other mental health impairments. To discount a Plaintiff's testimony, and ALJ must cite daily activities that "meet the threshold for transferable work skills" or "contradict [a claimant's] testimony." *Orn*, 495 F.3d at 639. The ALJ contrasted Plaintiff's testimony about regular dissociation, memory problems, and difficulty leaving the home (Tr. 43-49) with records showing that Plaintiff was able to babysit for other children, went shopping, cooked for her children, took her kids to and from school, and went out with friends. Tr. 16-25, 47, 57-58, 73, 292-296, 372, 538. This was another clear and convincing reason for the ALJ to rely upon to discount Plaintiff's testimony.

## II.     Medical Opinion Evidence

Plaintiff also argues that the ALJ erred in rejecting the medical opinions of Lois Michaud, Ph.D., and Hernan Schmidt, M.D. For claims filed on or after March 27, 2017, ALJs are no longer required to give deference to any medical opinion, including treating source opinions. Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 404.1520c. Instead, the agency considers several factors. 20 C.F.R. § 404.1520c(a). These are: supportability, consistency, relationship to the claimant, specialization, and "other factors." 20 C.F.R. § 404.1520c(c)(1)-(5). The "most important" factors in the evaluation process are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2).

Under this framework, the ALJ must "articulate ... how persuasive [they] find all of the medical opinions" from each doctor or other source. 20 C.F.R. § 404.1520c(b)(2). In doing so, the ALJ is required to explain how supportability and consistency were considered and may explain how the other factors were considered. 20 C.F.R § 404.1520c(b)(2). When two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how the other factors were considered. 20 C.F.R. § 404.1520c(b)(3). "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

    A.  Dr. Michaud

The agency referred Plaintiff to Dr. Michaud in June 2019 for a consultative psychodiagnostic evaluation. Tr. 531. Dr. Michaud reviewed available medical records, conducted a clinical interview, and performed a mental status examination. Tr. 531-40. Plaintiff reported PTSD, ADHD, depression, anxiety, memory deficits, and dissociations. Tr. 531. She endorsed a history of physical, sexual, mental, and emotional abuse. Tr. 532. She has a learning disorder and was on an individualized education plan ("IEP") in school. Tr. 532. She did not have a high school diploma or GED. Tr. 533. She struggled to interact with more than one person at a time; she went into "fight/flight mode" and had to walk away. Tr. 533. She had "bad" social anxiety and dissociated frequently. Tr. 533. She tried to ground herself and avoid dissociating by checking the time every five minutes or so, but she frequently lost time. Tr. 533, 536. Her depression and anxiety had worsened over time. Tr. 536. She had nightmares and intrusive memories of past trauma. Tr. 537. She had panic episodes nearly every day that lasted between

11 – OPINION & ORDER

five and fifteen minutes, "until [she] dissociate[d]." Tr. 537. She had "two good days a week with no panic." Tr. 537. She had difficulty concentrating and focusing. Tr. 538. She was impulsive, which at times caused people to become upset with her. Tr. 538. She had a "horrible" memory because of her dissociative episodes. Tr. 538.

Dr. Michaud noted that Plaintiff made good eye contact but frequently yawned. Tr. 539. She demonstrated rote verbal memory. Tr. 539. She exhibited deficits in concentration, immediate recall, and verbal comprehension when asked to count to ten before repeating three and four-digit number strings. Tr. 539. She used her fingers to add and subtract single- and double-digit numbers. Tr. 539. She struggled on serial sevens and exhibited poor mental arithmetic and working memory skills. Tr. 539. She was able to spell the word "world" forward and backward slowly but correctly. Tr. 539. She could not recall any of four items after a five-minute delay. Tr. 539-40. She demonstrated poor short-term verbal memory. Tr. 540. Her general fund of knowledge was fair to poor. Tr. 540. Her vocabulary was limited and consistent with her educational history. Tr. 540. Her cognitive skills were estimated to fall within the low average range. Tr. 540. Her speech flow was mildly pressured, and her speech content was not always linear. Tr. 540. She evidenced persistence during the exam but seemed to have some difficulty remaining settled. Tr. 540. Her insight was fair to good, and her judgment appeared fair. Tr. 540. She had a mildly anxious mood and affect. Tr. 540. She interrupted the flow several times to ask for the time to stay grounded and avoid dissociating. Tr. 540.

Dr. Michaud diagnosed PTSD with dissociative symptoms; panic disorder; persistent depressive disorder; specific learning disorder with impairment in mathematics; rule-out specific learning disorder with impairment in reading and written expression; and rule-out ADHD. Tr. 541. Dr. Michaud opined:

12 – OPINION & ORDER

> The claimant exhibited deficits in concentration, immediate recall, working memory and short-term verbal memory, along with verbal comprehension. She will do best with written feedback of important information, as well as written reminders. She will do best with repetitions of instructions and a check to assure comprehension of what has been said to her. She is likely to require assistance with paperwork and with maneuvering the steps needed to obtain services and make connection with resources.

Tr. 542

The ALJ rejected Dr. Michaud's opinion as unpersuasive. Tr. 23. The ALJ reasoned, first, that "[a]lthough fairly well supported by the cited deficits seen on Dr. Michaud's examination of the claimant, overall support for these contentions was also compromised by Dr. Michaud's clear reliance on the claimant's subjective allegations." Tr. 23. The ALJ further concluded that Dr. Michaud's opinion was "inconsistent with the remainder of the medical evidence – including, for example, evidence of good mental status examinations in 2020, and evidence of improvement in symptoms, with only conservative treatment, appearing in the treatment notes of Dr. Schmidt." Tr. 23 (internal citations omitted).

First, the ALJ erred by rejecting Dr. Michaud's opinion for its reliance on Plaintiff's allegations. If a physician's opinion is based to a large extent on a claimant's self-reports and not on clinical evidence, and the ALJ properly finds the applicant not credible, the ALJ can discount the treating provider's opinion. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). Although the ALJ properly discounted some limited aspects of Plaintiff's testimony, she did not discard the bulk of Plaintiff's allegations about anxiety and dissociation that also underpin Dr. Michaud's treatment notes. Moreover, "the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). In *Buck*, the Court held that a clinical interview and a mental status evaluation conducted by the psychiatrist provided sufficient objective

13 – OPINION & ORDER

measures. *Id.* Here, as in *Buck*, Dr. Michaud performed a clinical interview and a mental status evaluation. Tr. 531-40. At that interview, Dr. Michaud used sufficiently objective measures to justify her medical opinion, and the ALJ did not discount the large majority of Plaintiff's testimony that supported Dr. Michaud's opinion. It was therefore error for the ALJ to reject Dr. Michaud's opinion as "compromised by Dr. Michaud's clear reliance on the claimant's subjective allegations." Tr. 23.

The ALJ also failed to accurately capture the supportability and consistency of Dr. Michaud's June, 2019 opinion by comparing it only to Plaintiff's overall improvement in mental health symptoms in 2020-21. The supportability factor looks to the relevant objective medical evidence and the supporting explanations a medical source provides for their opinions. 20 C.F.R. § 404.1520c(c)(1); *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020). The consistency factor requires an ALJ to evaluate an opinion's persuasiveness in relation to its consistency with evidence from other sources. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2); *Woods*, 32 F.4th at 792. The ALJ concluded that Dr. Michaud's opined limitations were not consistent with the "remainder of the medical evidence, especially evidence of good mental status examinations in 2020 and 2021." Tr. 23, 694, 704, 733. The ALJ also noted that Dr. Michaud's opinion was inconsistent with the conservative and effective treatment Plaintiff received overall. Tr. 23. Specifically, the ALJ referenced the two most recent medical notes from Plaintiff's psychiatrist, Dr. Schmidt, which reflect significant progress on her anxiety, memory, and other related mental health symptoms. Tr. 23. These notes reflect "healthy and stable" progress, few if any panic attacks, and several objective markers of improvements such as "fairly good" focus, "average" intellect, no notable memory issues, and an affect that is "starting to show more congruence." Tr. 919-21. These objective markers of improvement all amount to a reasonable basis to conclude

that Dr. Michaud's opined limitations did not persist until 2021, but do not directly address the full scope of the relevant period.

The ALJ failed to analyze Dr. Michaud's opinion about Plaintiff's ability to function between March 31, 2017 (the alleged onset date) and the signs of improvement in 2020, and she therefore erred in part. As the Ninth Circuit has cautioned, it is error for an ALJ to rest a conclusion on her assessment of [the claimant's] testimony regarding his functioning at the time of the hearing, without "analyz[ing] [the claimant's] testimony regarding his capacities in past years." *Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021). This reasoning applies with equal force to medical opinions. Physician reports of "improvement" are not "sufficient to undermine the repeated diagnosis of [the alleged mental health] conditions" in an earlier physician's report or render the earlier medical opinions "inconsistent" and so not credible. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1200–1201 (9th Cir. 2008). In was error for the ALJ to disregard Dr. Michaud's 2019 medical opinion about Plaintiff's inability to work between 2017-2019 based upon progress made in 2020-21. *See id*. Defendant does not engage with *Smith,* or address the Ninth Circuit's holding that an ALJ cannot disregard disability evidence for a time frame within the relevant period simply because it differs from a claimant's subsequent improvement with treatment. The ALJ's decision to discredit 2019 evidence of disability and failure to consider whether Plaintiff was disabled for a portion of the relevant period was material to her RFC and thus to her ultimate disability determination. On remand, the ALJ should consider Dr. Michaud's opinion about Plaintiff's ability to function as it relates to the relevant period between the alleged onset date, March 31, 2017, and the date of Dr. Michaud's opinion.

15 – OPINION & ORDER

*B. Dr. Schmidt*

In June 2021, Dr. Herman Schmidt reported in a written statement that he had been treating Plaintiff since October 2018 and currently saw her every three months for psychotherapy and medication management. Tr. 925. Their visits had been much more frequent at times. Tr. 925. Dr. Schmidt noted that Plaintiff often had severe dysfunction due to her conditions. Tr. 926. She was unable to follow detailed instructions or organize a coherent workday. Tr. 926. She was unable to manage fairly simple customer requests without errors or omissions. Tr. 926. She would need to leave work early if faced with criticism. Tr. 926. She would not be able to attend work regularly or keep up with routines due to decreased attention span, low self-esteem, and preoccupation with consequences. Tr. 926.

Dr. Schmidt opined that Plaintiff was markedly to extremely limited in the ability to understand and remember simple instructions. Tr. 929. She was mildly to markedly limited in the ability to carry out simple instructions. Tr. 929. She was mildly limited in the ability to make judgments on simple work-related decisions. Tr. 929. She was extremely limited in the ability to understand, remember, and carry out complex instructions. Tr. 929. She was markedly to extremely limited in the ability to make judgments on complex work-related decisions. Tr. 929. Dr. Schmidt based this assessment on Plaintiff's poor attention span, low confidence, fear of criticism, past trauma, inability to follow through, and intrusive memories. Tr. 929.

Dr. Schmidt additionally assessed that Plaintiff was mildly to moderately limited in the ability to interact appropriately with the public. Tr. 929. She was mildly to extremely limited in the ability to interact appropriately with supervisors. Tr. 929. She was moderately to markedly limited in the ability to interact with coworkers. Tr. 929. She was moderately limited in the ability to respond appropriately to usual work situations, and she was mildly to markedly limited

in the ability to respond appropriately to changes in a routine work setting. Tr. 929. Dr. Schmidt based this assessment on Plaintiff's poor attention span, low confidence, fear of criticism, past trauma, inability to follow through, intrusive memories, and mood swings. Tr. 929-30. He noted that Plaintiff's mental status examinations were consistent with his assessment. Tr. 930. He also noted that Plaintiff's past methamphetamine use had caused substantial damage. Tr. 930. He opined that Plaintiff would be off task at least 15% of a workday and would be absent more than four workdays per month due to anxiety, moods, memory and focus issues, and erratic sleep patterns. Tr. 931-32.

      The ALJ found Dr. Schmidt's opinion "unpersuasive, due to extreme overstatement relative to the evidence." Tr. 24. Specifically, the ALJ discounted Dr. Schmidt's opinion that Plaintiff could not manage even simple customer requests in light of her recently demonstrated ability to babysit the children of others. Tr. 24. The ALJ further reasoned that Dr. Schmidt's "contention that the claimant has extreme limitations of understanding, remembering, and social interaction also lacks support, due to evidence of contrary mental status examinations of 2020." Tr. 24. Finally, the ALJ rejected Dr. Schmidt's "contentions of work-preclusive time off-task and absenteeism" because Plaintiff "was able to successfully attend many doctor's appointments during the period at issue, and is able to help her children regularly attend school." Tr. 24-25.

      To begin with, the ALJ adequately considered the supportability and consistency of Dr. Schmidt's opinions about Plaintiff's extreme limitations of understanding, remembering, and social interaction when finding them unpersuasive. As noted above, ALJs must consider both the consistency and supportability of medical opinions when evaluating them. 20 C.F.R. §§ 404.1520c(c)(1-2), 416.920c(c)(1-2). Internal inconsistencies in a physician's opinion can be a sufficient reason to find a medical opinion unpersuasive. *See Bayliss v. Barnhart*, 427 F.3d 1211,

1216 (9th Cir. 2005) (holding that an ALJ may cite internal inconsistencies in a physician's opinion). Here, Dr. Schmidt assigned Plaintiff several "extreme" limitations in her ability to understand, remember, and carry out complex instructions and "marked to extreme" limitations in her ability to understand and remember simple instructions and to make judgments on complex work-related decisions. "Extreme" is the most severe limitation in the Social Security lexicon, meaning it "interferes very seriously with your ability to independently initiate, sustain, or complete activities," or is "equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean." 20 C.F.R. § 416.926a(e)(3)(i). The ALJ reasonably found these "extreme" opinions unpersuasive when compared with Dr. Schmidt's mental status examinations showing normal attitude, speech, thought process, judgment, insight, orientation, memory, attention/concentration, euthymic mood, and full affect in 2020, (Tr. 695, 705, 734), and the same in January of 2021. Tr. 21 (citing Tr. 921). The ALJ also cited Dr. Schmidt's notes showing the conditions that precipitated Plaintiff's memory and cognitive symptoms--anxiety and dissociation--had diminished in 2020 and 2021. Tr. 21. Ultimately, the ALJ's record citations provided substantial evidence to support her decision to find Dr. Schmidt's conclusions about Plaintiff's "extreme" limitations unpersuasive.

      The ALJ erred, however, in failing to support her decision to discount other aspects of Dr. Schmidt's opinion with substantial evidence. ALJs must analyze the supportability and consistency of each medical opinion in the record, and conflict with other record evidence can be a sufficient basis to find a medical opinion unpersuasive. *Bayliss*, 427 F.3d at 1216. Here, the ALJ also discounted Dr. Schmidt's opinion that Plaintiff would be off task at least 15% of a workday and would be absent more than four workdays per month due to anxiety, moods,

memory and focus issues, and erratic sleep patterns because she was able to successfully attend many doctor's appointments during the period at issue, and to help her children regularly attend school. Tr. 24-25, 931-32. The activities the ALJ identifies, however, do not actually conflict with Dr. Schmidt's medical opinion about Plaintiff's inability to focus or attend work. In fact, the record reflects that Plaintiff missed several medical appointments during the relevant period. Tr. 863, 893. And Plaintiff's ability to bike one block to drop her children off at school and pick them up does not seriously undermine Dr. Schmidt's opinions either. Tr. 24-25. Because the record evidence the ALJ cited does not conflict with Dr. Schmidt's opinions about Plaintiff's inability to focus and likely absenteeism, the Court finds substantial evidence does not support the ALJ's decision to find this aspect of his opinion unpersuasive.

### III.     Remand

When a court determines the Commissioner erred in denying benefits, the court may affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for a rehearing." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (quoting 42 U.S.C. § 405(g)). In determining whether to remand for further proceedings or the immediate payment of benefits, the Ninth Circuit employs the following "credit-as-true" standard when the following requisites are met: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed and further proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the plaintiff disabled on remand. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). If all three requisites are met, the court may remand for benefits. *Id.* However, even if all of the requisites are met, the court may still remand for

19 – OPINION & ORDER

further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled." *Id.* at 1021.

Here, the first requisite is met because the ALJ erroneously rejected aspects of Dr. Michaud and Dr. Schmidt's medical opinions. Further proceedings would be useful for the ALJ to consider the supportability and consistency of Dr. Michaud's opinion about Plaintiff's ability to function between the alleged onset date, March 31, 2017, and the date of Dr. Michaud's opinion, and to properly consider whether Dr. Schmidt's opinions about Plaintiff's focus and absenteeism are supportable and consistent with the record. Therefore, this case is reversed and remanded for further proceedings so that the ALJ can re-evaluate Drs. Michaud and Schmidt's medical opinions, reformulate the RFC if necessary, and seek further VE testimony at step five, if necessary.

## CONCLUSION

For the reasons given above, I REVERSE the Commissioner's decision and REMAND this case for further proceedings.

IT IS SO ORDERED.

DATED:  March 14, 2024  .

_____
MARCO A. HERNÁNDEZ
United States District Judge

20 – OPINION & ORDER